# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

**LAWRENCE DIGSBY,**

    Petitioner,

vs.

                                                **CASE NO. 3:07cv540-MCR/WCS**

**WALTER A. McNEIL,**

    Respondent.

_____/

## REPORT AND RECOMMENDATION

    This is an amended petition for writ of habeas corpus filed by Lawrence Digsby pursuant to 28 U.S.C. § 2254. Doc. 1. Petitioner challenges his conviction for possession of a firearm after having been convicted of a felony. Petitioner was convicted in the Circuit Court of the First Judicial Circuit, in and for Escambia County, Florida, case number 04-4467-CF. Respondent filed an answer and the record in paper form, doc. 11, and Petitioner filed a traverse, doc. 14. Respondent agrees that the petition is timely and state court remedies have been exhausted. Doc. 11, pp. 6-7.

**Procedural history**

Petitioner was originally charged by information with aggravated battery with great bodily harm and discharging a firearm (Count One), possession of a firearm by a convicted felon (Count Two), and possession of less than 20 grams of marijuana (Count Three).  Doc. 11, p. 2.  On Petitioner's motion, Count Two was severed for a separate trial.  *Id.*  Petitioner was acquitted by a jury of Count One, and was found guilty of Count Three.  *Id.*, p. 4.  Petitioner does not challenge the marijuana conviction.

At a second jury trial, Petitioner was convicted of possession of a firearm as a convicted felon.  *Id.*, p. 5.  He was sentenced to 10 years in prison with 3 years as a minimum mandatory term.  *Id.*  It is this latter conviction that is at issue in this case.

**Evidence at the two trials**

The evidence at the first trial is summarized by Respondent.  On September 29, 2004, Deputy Sheriff William Arnold testified that he saw Petitioner and another man across the street arguing.  Doc. 11, p. 2.  There were a couple of other people standing nearby.  *Id.*  When Arnold crossed the street, he saw that the other man was "holding himself" and said that Petitioner had shot him.  *Id.*, pp. 2-3.  Arnold confronted Petitioner, handcuffed him, patted him down, and found a loaded handgun pushed down into Petitioner's back pocket.  *Id.*, p. 3.

Jackie Swindell, one of the bystanders, testified that Petitioner accused the victim of stealing his Jeep and a fight broke out.  *Id.*  Swindell said that Petitioner was "whipping" the other man.  *Id.*  Swindell said that during the fight, Petitioner pulled a gun out of his back pocket, shot the victim, and put the gun back into his pocket.  *Id.*  Swindell said that the victim did not have a weapon.  *Id.*

Petitioner testified that the other man initiated the fight, and there was "very little physical fighting." *Id.*, p. 3. Petitioner said that during the fight, the other man (Wiley) had a pistol in his hand. *Id.*, p. 4. Petitioner said he struggled with the man over the pistol, the pistol went off, he snatched the pistol out of Wiley's hands, and he put the pistol into his back pocket. *Id.* Petitioner denied that it was his pistol. *Id.*

The jury found Petitioner not guilty of Count One, the aggravated battery charge, but found him guilty of Count Three, possession of a small amount of marijuana. *Id.*

In the second trial (the severed charge), Deputy Arnold testified to the bare essentials. He said he saw a "loud verbal argument between two men at the corner of Green and Cervantes Streets." Doc. 11, Ex. D (initial brief on appeal), p. 3.[1] He arrested Petitioner and found a loaded handgun in his back pocket. *Id.* Petitioner again testified that he took the gun from Wiley during the fight because Wiley was trying to shoot him with it. *Id.* He said that Wiley had stolen his Jeep. *Id.* He said that when he confronted Wiley about the theft, Wiley pushed him. *Id.* Petitioner slapped Wiley back, knocking him down. *Id.* Petitioner said that when Wiley got up, he saw a pistol in Wiley's hand and he tried to take it away. *Id.* During this struggle, the pistol went off, shooting Wiley in the leg. *Id.* This caused Wiley to release his grip on the pistol, and Petitioner took it from him and put it into his back pocket. *Id.*, p. 4. Petitioner said he was arrested before he could explain what happened. *Id.* He told the jury that he had been acquitted of assault upon Wiley, and said that he possessed the pistol without thinking that he was a convicted felon. *Id.* He said he had no other place to put the

---

[1] Hereafter, references to exhibits are to those filed with document 11.

Case No. 3:07cv540-MCR/WCS

pistol. *Id.*, p. 6. Petitioner's brother testified about the fight, but did not see the gun come into play. *Id.*, pp. 6-7. Swindell again testified that he saw the butt of the handgun extending from Petitioner's back pocket before any shots were fired, and he saw Petitioner pull the handgun out and shoot Wiley in the abdomen. *Id.*, p. 7. The jury found Petitioner guilty of possession of a firearm as a convicted felon. *Id.*

**Section 2254 Standard of Review**

For claims that were properly exhausted and adjudicated in state court, this court's review is limited. "[A] determination of a factual issue made by a State court shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Bui v. Haley, 321 F.3d 1304, 1322 (11th Cir. 2003) (citing the statute, footnote omitted). Moreover, as to a factual issue adjudicated by the state court, Petitioner must show that the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2); 321 F.3d at 1322 (citing the statute). Section 2254(d)(2) is satisfied "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003) (citing § 2254(e)(1), other citation omitted).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States,"

refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. Hawkins v. Alabama, 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also*, Carey v. Musladin, 549 U.S. 70, 74-77, 127 S.Ct. 649, 653-654, 166 L.Ed.2d 482 (2006) (§ 2254 refers to holdings, rather than *dicta*, of the Supreme Court, collecting cases to show that "[r]eflecting the lack of guidance from this Court, lower courts have diverged widely in their treatment of defendants' claims.").

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. Williams v. Taylor, 529 U.S. 362, 404-406, 120 S.Ct. 1495, 1519-1520, 146 L.Ed.2d 389 (2000); Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citing Williams).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. at 412-413, 120 S.Ct. at 1523; 535 U.S. at 694, 122 S.Ct. at 1850. *See also*, Panetti v. Quarterman, __ U.S. __, 127 S.Ct. 2842, 2858-2859, 168

L.Ed.2d 662 (2007) (discussing the unreasonable application standard) (citing Williams, other citations omitted).

"Avoiding these pitfalls [described in Williams v. Taylor] does not require citation of our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (emphasis in original).  Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it."  Holland v. Jackson, 542 U.S. 649, 652, 124 S.Ct. 2736, 2738, 159 L.Ed.2d 683 (2004).

The basic law governing ineffective assistance of counsel claims was clearly established in Strickland v. Washington, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066, 2068, 80 L.Ed.2d 674 (1984).  Williams, 529 U.S. at 405-406, 120 S.Ct. at 1519-1520; Bell, 535 U.S. at 694-695, 122 S.Ct. at 1850.  Under the two part test of Strickland, Petitioner must demonstrate both deficient performance and prejudice to the outcome.

To establish deficient performance, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  In reviewing the claim, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  "[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take." Chandler

v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc), *cert. denied,* 531 U.S. 1204 (2001).

For prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694, 104 S.Ct. at 2068.  Although Strickland explained the performance and prejudice prongs of analysis, "there is no reason . . . to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."  466 U.S. at 697, 104 S.Ct. at 2069. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  *Id.*

Ineffective assistance of appellate counsel claims are analyzed under the test enunciated in Strickland v. Washington.  Grubbs v. Singletary, 120 F.3d 1174, 1176 (11th Cir. 1997); Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991), *cert. denied*, 502 U.S. 1077 (1992).  With regard to attorney error, appellate counsel need not raise every nonfrivolous issue.  Jones v. Barnes, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).  "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."  463 U.S. at 751-752, 103 S.Ct. at 3313.  The "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  Smith v. Murray, 477 U.S. 527, 536, 106 S.Ct. 2661, 2667 (quoting Barnes).  "Notwithstanding *Barnes*, it is still possible to bring a *Strickland*

claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent. *See, e.g., Gray v. Greer*, 800 F.2d 644, 646 (C.A.7 1986) ('Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome')." Smith v. Robbins, 528 U.S. 259, 288, 120 S.Ct. 746, 765, 145 L.Ed.2d 756 (2000). *See also* Bundy v. Dugger, 850 F.2d 1402, 1411 (11th Cir. 1988), *cert. denied,* 488 U.S. 1034 (1989) (discussing Strickland, and Barnes). To determine prejudice, the court reviews the merits of the omitted or poorly presented claim, and will find prejudice only where the claim would have a reasonable probability of success on appeal. Heath v. Jones, 941 F.2d at 1136.

     A state court's adjudication of an ineffective assistance claim does not satisfy the "contrary to" language of § 2254(d)(1) even if this court might have applied Strickland differently. Williams, 529 U.S. at 406, 120 S.Ct. at 1520; Bell, 535 U.S. at 698, 122 S.Ct. at 1852. To determine whether the state court's adjudication was an "unreasonable application" of Strickland, Petitioner "must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance . . . . Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." Bell, 535 U.S. at 698-699, 122 S.Ct. at 1852 (*citing* Williams). "[T]he most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Williams v. Taylor, 529 U.S. at 410, 120 S.Ct. at 1522.

**Ground One**

Petitioner contends that his appellate attorney was ineffective because he failed to argue that, after his acquittal of aggravated battery with great bodily harm, his conviction of being a felon in possession of a firearm violated double jeopardy. Doc. 1, p. 5. In his reply, Petitioner also asserts that his appellate counsel was ineffective for failing to argue that this conviction was precluded by collateral estoppel. Doc. 14, pp. 5-6. The petition will be liberally construed to include both claims, especially since Respondent has addressed both claims.

Petitioner's trial counsel filed a motion to dismiss Count Two, arguing that trial on that charge was barred by collateral estoppel and double jeopardy in light of the verdict in the first trial. Ex. A, pp. 11-12. Counsel argued that the only defense presented by Petitioner during that first trial was that Wiley possessed the firearm and that Petitioner had only grabbed the firearm away from Wiley in self defense. *Id.*, p. 11. Counsel argued that the jury in the first trial must have found that Petitioner did not possess the firearm because the jury acquitted him of Count One. *Id.*, p. 12. Counsel also argued that trial on Count Two would be fundamentally unfair and violate the Double Jeopardy Clause because the jury in the first trial must have found that Petitioner acted in self defense. *Id.*

The trial court noted that Petitioner had moved to sever Count Two from the trial of Count One, and denied the motion as to the double jeopardy claim. Ex. C, p. 4. The court also denied the motion without comment as to the collateral estoppel claim. *Id.* The oral ruling was not reduced to a written order.

These two claims were not presented on direct appeal. Ex. D (initial brief on appeal). Petitioner filed a petition pursuant to FLA. R. APP. P. 9.141(c) in the First District Court of Appeal alleging ineffective assistance of appellate counsel. Ex. H. The petition was denied on the merits without an opinion. Ex. L.

It is unclear to me whether Petitioner could appeal the denial of his motion to dismiss in the absence of a written order from the trial court. Owens v. State, 579 So. 2d 311 (Fla. 1st DCA 1991); State v. Johnson, 892 So. 2d 563 (Fla. 1st DCA 2005). On the other hand, it is routine for matters ruled upon on the record may be appealed since the contemporaneous objection preserves the point for appeal. Randolph v. State, 853 So. 2d 1051, 1066 (Fla. 2003); Capron v. State, 948 So. 2d 954, 956 (Fla. 5th DCA 2007).

It is unnecessary to determine these issues of state procedural law, however, because the underlying claim fails on the merits. The Double Jeopardy Clause protects against a second prosecution for the same offense after acquittal. North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct 2072, 2076, 23 L.Ed.2d 656 (1969). An offense is not the "same" for double jeopardy purposes if each offense contains an element not contained in the other. United States v. Dixon, 509 U.S. 688, 696, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 536 (1993), *citing*, Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). "[T]wo offenses are the same unless each requires proof of an additional fact which the other does not." Beverly v. Jones, 854 F.2d 412, 414 (11th Cir. 1988), *cert. denied*, 490 U.S. 1082 (1989), *also citing*, Blockburger.

"The offense of possession of a firearm by a convicted felon consists of two elements: (1) prior conviction of a felony and (2) knowingly owning or having a firearm in

one's care, custody, possession or control." Hines v. State, 983 So. 2d 721, 724 (Fla. 1st DCA), *review granted*, 990 So. 2d 1060 (Fla. Sep 29, 2008) (Table), *citing* FLA. STAT. § 790.23(1)(a) and FLA. STD. JURY INSTR. (CRIM.) 10.15.  The charge in Count One is defined by FLA. STAT. § 784.045(1)(a), which provides:

> (1)(a) A person commits aggravated battery who, in committing battery:
>
> > 1. Intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement; or
> >
> > 2. Uses a deadly weapon.

FLA. STAT. § 784.045(1)(a).  Whether the victim has sustained great bodily harm is a question of fact for the jury.  Morton v. State, 988 So. 2d 698 (Fla. 1st DCA 2008). Petitioner was also charged under FLA. STAT. §§ 775.087(1) and (2), which provide enhanced penalties for using a firearm to commit an aggravated battery (elevates the felony level one level) and for possessing a firearm during the commission of an aggravated battery (a minimum 10 year prison term).  Doc. 11, Ex. A (trial record), p. 1.

Plainly, therefore, the offenses alleged in Counts One and Two were different offenses.  The crime of possession of a firearm by a previously convicted felon requires proof of a prior felony conviction, an element not required for proof of aggravated battery.  The crime of aggravated battery causing great bodily harm requires proof of great bodily harm, an element not required for proof of felon in possession of a firearm. Therefore, double jeopardy is not implicated.  Moreover, even if the charge in Count Two were a lesser included offense of Count One, the State was entitled to try Petitioner on Count Two, even after an acquittal on Count One, without violating double jeopardy because Count Two was severed at Petitioner's request.  Jeffers v. United

States, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977). This aspect of the trial court's ruling, denying the motion to dismiss, was correct.

The issue of collateral estoppel was governed, at least in part, by consideration of Gragg v. State, 429 So. 2d 1204 (Fla.), *cert. denied*, 464 U.S. 820 (1983), which Petitioner cited in the motion to dismiss. In that case, the defendant was charged with aggravated battery by use of a firearm, possession of a firearm as a convicted felon, and aggravated assault by use of a firearm. 429 So. 2d at 1205. The defendant had the charge of possession of the firearm severed. *Id.* The victim testified that the defendant beat him with a pistol and his fists. *Id.* The defendant testified that he hit the victim with his fists but did not possess a firearm that night. *Id.* The jury asked the trial court whether defendant could be convicted of aggravated assault and battery if he did not have a gun that night, and the court told the jury that it would have to find that the defendant used the firearm to commit the assault and battery. *Id.* The jury found the defendant guilty of the lesser offenses of simple assault and simple battery. *Id.*, at 1206. The issue was whether these verdicts collaterally estopped trial on the charge of possession of a firearm as a convicted felon. The court noted that the only evidence that the defendant possessed a firearm was the testimony from the victim, and since the jury found him guilty of simple assault, it must have found that he committed the assault only with his fists and not with a firearm. The court said that the test for collateral estoppel is "whether such factual issue was actually decided by the jury in reaching its verdict." *Id.* The court further distinguished Jeffers and found that the defendant was not precluded from raising this defense by the fact that he had asked for severance of the possession charge. *Id.*, at 1207-1208.

Case No. 3:07cv540-MCR/WCS

In <u>Ashe v. Swenson</u>, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), in explaining the application of collateral estoppel to a second trial after acquittal in a first trial, the Supreme Court said:

> Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, *and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration*."

397 U.S. at 444, 90 S.Ct. at 1194 (emphasis added).

<u>Gragg</u> and <u>Ashe</u> show that collateral estoppel did not apply here to preclude trial on Count Two. A rational jury in the first trial did not necessarily have to ground its verdict upon a finding that Wiley had possession of the firearm when the fight began. The first jury could have found that Petitioner began the fight with the firearm in his back pocket, and that the firearm went off accidentally during the struggle, as he testified. If Petitioner had the firearm in his back pocket before the fight began, he was guilty of possessing a firearm as a convicted felon and what happened during the fight was immaterial. Petitioner's collateral estoppel claim, therefore, would have been rejected had it been properly preserved and presented on direct appeal.

Consequently, Petitioner has not shown that the state court's adjudication of the merits of the federal claim of ineffective assistance of appellate counsel for failing to raise double jeopardy and collateral estoppel claims on direct appeal has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

**Ground Two**

Petitioner argues that the trial court violated his due process and equal protection rights at sentencing by failing to inform him of his right to appointment of counsel other than from the Public Defender's office to file a motion for a new trial preserving claims of ineffective assistance of trial counsel for review on direct appeal. Doc. 1, pp. 5-6. Petitioner asserts that he had a right to file a motion for a new trial claiming ineffective assistance of trial counsel pursuant to FLA. R. CRIM. P. 3.600(b)(8), and he asserts that the trial court would have appointed him counsel to pursue that motion, counsel from outside the Public Defender's office due to the conflict. *Id.*, p. 6. He argues that since he was deprived of this Rule 3.600 remedy, he was forced to use Rule 3.800, where the Sixth Amendment right to counsel does not apply.

This claim was presented to the First District Court of Appeal by petition for writ of habeas corpus, seeking a belated appeal. Ex. O. The gist of the claim was that FLA. R. CRIM. P. 3.590(a) requires that a motion for a new trial be filed within 10 days of the verdict by trial counsel, rather than within a reasonable time by appellate counsel. Ex. O, p. 2. Petitioner argues that one of the claims that might be preserved for direct appeal by a motion for a new trial is that trial counsel was ineffective. Citing <u>Douglas v. People of State of Cal.</u>, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), Petitioner argued that he was indigent and he had a constitutional right to have a conflict-free lawyer (other than his trial counsel) file a motion for a new trial alleging that his trial counsel had been ineffective. *Id.* He argued that in the absence of a motion for a new trial raising the claim of ineffectiveness, the appellate court will not review a claim of

ineffectiveness of trial counsel. *Id.* The petition was denied on the merits without an opinion. Ex. P.

Douglas effectively ruled that an indigent defendant has an equal protection right to a lawyer to represent him in the process of identifying issues to present on appeal.[2] Douglas cautioned that the rule it enunciated applied only to the first direct appeal of right, and might not apply to denial of counsel to petition for discretionary review. 372 U.S. at 356, 83 S.Ct. at 816. Eleven years later, in Ross v. Moffitt, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), the Court ruled that an indigent criminal defendant does not have a constitutional right to appointment of counsel to pursue discretionary appellate review. Recently, the Court held that where the appellate court conducts some merits review, to determine whether to grant leave for discretionary first tier appellate review after a guilty plea or a nolo contendere plea, an indigent defendant is entitled to appointment of counsel. Halbert v. Michigan, 545 U.S. 605, 618, 125 S.Ct. 2582, 2591, 162 L.Ed.2d 552 (2005) (noting that "the court's response to the leave application by any of the specified alternatives – including denial of leave – necessarily entails some evaluation of the merits of the applicant's claims.").

"[W]ith rare exception ineffective assistance of counsel claims are not cognizable on direct appeal." Gore v. State, 784 So. 2d 418, 437 (Fla. 2001). "A claim of ineffective assistance of counsel may be raised on direct appeal only where the ineffectiveness is apparent on the face of the record." *Id.*, at 437-438. A claim of ineffective assistance of counsel is more properly raised by a post-conviction motion.

---

[2] As a consequence, a defendant has a constitutional right to the effective assistance of counsel on his first appeal of right. Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).

Consalvo v. State, 697 So. 2d 805, 811 n. 4 (Fla. 1996), *cert. denied*, 523 U.S. 1109 (1998).

> Claims of ineffective assistance of trial counsel are usually presented in a postconviction motion under Florida Rule of Criminal Procedure 3.850. Under that rule, the circuit court can be specifically presented with the claim, and apply the Strickland standard with reference to the full record and any evidence it may receive in an evidentiary hearing, including trial counsel's testimony. Thus, ineffective assistance claims are not usually presented to the judge at trial, and we have repeatedly stated such claims are not cognizable on direct appeal. *E.g., Martinez v. State*, 761 So. 2d 1074, 1078 n. 2 (Fla. 2000) ("With rare exception, ineffective assistance of counsel claims are not cognizable on direct appeal."); *McKinney v. State*, 579 So. 2d 80, 82 (Fla.1991) ("Claims of ineffective assistance of counsel are generally not reviewable on direct appeal but are more properly raised in a motion for postconviction relief."); *Kelley v. State*, 486 So. 2d 578, 585 (Fla. 1986) (same); *State v. Barber*, 301 So. 2d 7, 9 (Fla. 1974) (holding that claims of ineffective assistance of counsel "cannot properly be raised for the first time on direct appeal" because the trial court has not previously ruled on the issue). We recognize that "[t]here are rare exceptions where appellate counsel may successfully raise the issue on direct appeal because the ineffectiveness is apparent on the face of the record and it would be a waste of judicial resources to require the trial court to address the issue." *Blanco v. State*, 507 So. 2d 1377, 1384 (Fla. 1987); *see also Gore v. State*, 784 So. 2d 418, 437-38 (Fla. 2001) ("A claim of ineffective assistance of counsel may be raised on direct appeal only where the ineffectiveness is apparent on the face of the record."); *Mansfield v. State*, 758 So. 2d 636, 642 (Fla. 2000) (same). Thus, in the rare case, where both prongs of Strickland – the error and the prejudice – are manifest in the record, an appellate court may address an ineffective assistance claim.

Smith v. State, 2008 WL 4355404, *3 (Fla. Sep 25, 2008) (No. SC06-1903).

Thus, direct appellate review of a claim that trial counsel was ineffective is both discretionary and rare in Florida. It is discretionary because the appellate court can simply decline review in favor of review by post-conviction motion. Further, nothing needs to be done to preserve the claim on direct appeal where, in the rare case, the appellate court entertains it. The claim can be reviewed when both attorney error and prejudice are "manifest in the record." The claim need not be preserved by a motion for

a new trial.  If such a claim becomes apparent on direct appeal because "manifest in the record," and if the claim creates a conflict of interest for appellate counsel, appellate counsel may simply advise the court and new counsel would be appointed.  Therefore, Petitioner has not shown that the state court's adjudication of the merits of this federal claim has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

**Conclusion**

Accordingly, it is **RECOMMENDED** that 28 U.S.C. § 2254 petition for writ of habeas corpus filed by Lawrence Digsby challenging his conviction for possession of a firearm after having been convicted of a felony in the Circuit Court of the First Judicial Circuit, in and for Escambia County, Florida, case number 04-4467-CF, be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on December 15, 2008.


s/   William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**